UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ROBERT GARY KING** | : | Case No: 1:21-cv-232 |
| 635 Arlington Ave | : | |
| Cincinnati, Ohio 45215 | : | **Judge:** |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| **XTREME EXPRESS, LLC** | : | |
| 7400 Skyline Dr., Unit E | : | |
| Columbus, OH 43235 | : | |
| | : | |
| and, | : | |
| | : | |
| **XTREME LIMO, LLC** | : | |
| 8175 Winchcombe Dr. | : | |
| Dublin, OH 43016 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT WITH JURY DEMAND

Robert Gary King states the following for his Complaint against Xtreme Express, LLC and Xtreme Limo, LLC:

### INTRODUCTION

1.  This action arose after Doctors instructed Plaintiff Robert Gary King to quarantine for 14 days because he exhibited COVID-19 symptoms. Because of the quarantine, Mr. King was not able to work for either Defendant Extreme Express or Defendant Extreme Limo. Upon the expiration of the 14-day quarantine, Mr. King attempted to return to work. However, Defendant violated Mr. King's rights under the Families First Coronavirus Response Act ("FFCRA") and The Emergency Paid Sick Leave Act and terminated him in retaliation for quarantining.

1

**PARTIES**

2. Plaintiff Robert Gary King ("Mr. King" or "Plaintiff") is a resident of Cincinnati, Ohio. Plaintiff's claims arose out of an employment relationship with Xtreme Express, LLC and Xtreme Limo, LLC.

3. Xtreme Express, LLC ("Defendant Express") is a company registered with the Ohio Secretary of State doing business in Hamilton County, Ohio. Upon information and belief, Defendant employs over 50 employees and engages in interstate commerce. Defendant Express engages in delivery, courier, logistic, and warehousing services.

4. Extreme Limo, LLC ("Defendant Limo") is a company registered with the Ohio Secretary of State doing business in Hamilton County, Ohio. Upon information and belief, Defendant employs over 50 employees and engages in interstate commerce. Defendant Limo provides Limo services.

5. Defendant Express and Defendant Limo ("Defendants") are owned by the same person or group of people. The management, ownership, and decision-makers of Defendants are significantly intertwined. Likewise, Defendants share a common office space.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Mr. King asserts claims arising under the Families First Coronavirus Response Act ("FFCRA") and The Emergency Paid Sick Leave Act ("EPSLA").

7. Mr. King also states claims under the laws of the State of Ohio. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States

Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

8. Venue is proper in this Court because the transactions and occurrences occurred in Cincinnati, Ohio.

## BACKGROUND FACTS

9. Mr. King diligently worked for Defendant Limo for approximately 1.5 years until it terminated him.

10. Mr. King was a well-respected and highly reviewed and rated limo driver for Defendant Limo.

11. Mr. King worked for Defendant Express for approximately four months before it terminated him.

12. Mr. King was a delivery truck driver for Defendant Express.

13. Mr. King was qualified for both positions.

14. Mr. King had no write-ups or reprimands from either Defendant.

15. In July of 2020, Mr. King started experiencing flu-like symptoms.

16. Mr. King went to the hospital to receive a COVID-19 test.

17. Mr. King's doctors in the hospital instructed him to quarantine for 14 days because his symptoms exhibited COVID-19 symptoms.

18. Mr. King immediately informed his supervisors at both Defendants that his Doctor instructed him to quarantine.

19. A couple of days after his hospital visit, Mr. King followed up with his family doctor who also recommended that Mr. King stay in quarantine.

20. Mr. King again informed Defendants that he needed to quarantine for 14-days.

21. When his 14-day quarantine expired, Mr. King contacted Defendant Limo and requested to return.

22. However, Defendant Express terminated Mr. King.

23. This was a surprise to Mr. King, Defendant Express still had work he could complete, and Mr. King's job performance had been outstanding.

24. After the quarantine, Mr. King also contacted Defendant Limo and informed it that he was able to return to work.

25. Defendant Limo informed Mr. King that it wanted him to come back to work and would add him back into the schedule.

26. However, after Defendant Limo learned that Mr. King contacted an attorney regarding potential FFCRA and EPSLA violations, Defendant Limo terminated Mr. King.

27. Defendants terminated Mr. King because he was exercising his rights under the FFCRA and EPSLA.

28. Neither Defendant paid Mr. King for the two weeks he was forced to quarantine because of COVID-19.

29. Mr. King suffered damages and will continue to suffer damages in the future because of Defendants' actions.

## CLAIMS

### COUNT I
### INTERFERENCE OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT AND THE EMERGENCY PAID SICK LEAVE ACT

30. Mr. King restates and incorporates all paragraphs.

31. The FFCRA and the EPSLA entitles certain employees of covered employers to take up to two weeks of paid sick leave if the employee is unable to work for specific qualifying reasons related to COVID-19 such as (1) Being subject to a Federal, state, or local quarantine or isolation order related to COVID-19; (2) being advised by a health care provider to self-quarantine due to COVID-19 concerns; and (3) experiencing COVID-19 symptoms and seeking a medical diagnosis.

32. Both Defendants are covered employers under the FFCRA and the EPSLA.

33. Mr. King was a covered employee for both Defendants.

34. Mr. King was qualified for COVID-19 paid leave.

35. Mr. King experienced COVID-19 symptoms and doctors recommended that he remain in quarantine for 14-days.

36. Mr. King's symptoms included a sore throat, fever, nausea, and other COVID-19 symptoms.

37. Mr. King informed Defendants of his requirement to quarantine.

38. Mr. King provided Defendants with a note from his doctor verifying the requirement to quarantine.

39. Defendant did not want Mr. King to quarantine.

40. Mr. King was able to take two weeks off to quarantine but was not paid for this time off and was terminated by Defendants upon his return.

41. Thus, Defendant interfered with and restrained Mr. King's attempt to exercise FFCRA and EPSLA leave.

42. Defendants' actions were malicious and in a conscious disregard of the rights of Mr. King.

43. Mr. King suffered damages and will continue to suffer damages in the future because of Defendants' interference with his rights to take FFCRA and EPSLA leave.

44. Mr. King is entitled to all damages and injunctive relief permissible under the FFCRA and the EPSLA and the FLSA.

## COUNT II
## RETALIATION UNDER THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT AND THE EMERGENCY PAID SICK LEAVE ACT

45. Mr. King restates and incorporates all paragraphs.

46. The FFCRA and the EPSLA entitles certain employees of covered employers to take up to two weeks of paid sick leave if the employee is unable to work for specific qualifying reasons related to COVID-19 such as (1) Being subject to a Federal, state, or local quarantine or isolation order related to COVID-19; (2) being advised by a health care provider to self-quarantine due to COVID-19 concerns; and (3) experiencing COVID-19 symptoms and seeking a medical diagnosis.

47. The FFCRA and the EPSLA prohibit any employer from discharging, disciplining, or in any other manner discriminating against any employee who (1) takes leave in accordance with the FFCRA and the EPSLA; or (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FFCRA and the EPSLA.

48. Mr. King experienced COVID-19 symptoms and doctors recommended that he remain in quarantine for 14-days.

49. Mr. King's symptoms included a sore throat, fever, nausea, and other COVID-19 symptoms.

50. Mr. King informed Defendants of his requirement to quarantine.

51. Mr. King provided Defendants with a note from his doctor verifying the requirement to quarantine.

52. Defendants retaliated against Mr. King for requesting and taking leave to quarantine.

53. Defendant Express terminated Mr. King the day he returned to work from quarantine.

54. Defendant Limo terminated Mr. King when it discovered he had contacted an attorney and intended to pursue a claim under the FFCRA and the EPSLA.

55. Defendants terminated Mr. King because he exercised his rights under the FFCRA and the EPSLA and quarantined under the advice and instructions of doctors.

56. Defendants' actions were malicious and in a conscious disregard of the rights of Mr. King.

57. Mr. King has suffered damages and will continue to suffer damages because of Defendants' retaliation.

58. Mr. King is entitled to all damages and injunctive relief permissible under the FFCRA and the EPSLA and the FLSA.

## COUNT III
### Disability Discrimination and Retaliation Under R.C. § 4112

59. Mr. King restates and incorporates all paragraphs.

60. Mr. King suffered a disability and was forced to quarantine because of COVID-19 symptoms.

61. Mr. King was fully qualified for his position and he could perform all the essential functions of the position.

62. Defendants terminated Mr. King solely because he had a disability or because Defendants perceived or regarded Mr. King as having a disability.

63. Mr. King was ready, willing, and able to perform his job duties when he returned to work from quarantine.

64. Defendants' termination of Mr. King based on his disability or perceived disability and Defendants' failure to make an individualized assessment to determine whether Mr. King could be employed or whether a reasonable accommodation would enable him to be employed by Defendant violated Ohio Law.

65. As a result of Defendants' actions, Mr. King has suffered and will continue to suffer both economic and non-economic damages.

66. Defendants terminated Mr. King because he had a disability.

67. Defendants' adverse actions constituted retaliatory workplace harassment.

68. Defendants' actions were malicious and in a conscious disregard of the rights of Mr. King.

69. Mr. King is entitled to all damages and injunctive relief permissible under R.C. § 4112.

**WHEREFORE**, Mr. King respectfully requests that this Court find for him and award him the following:

a. Compensatory damages;

b. Reinstatement;

c. Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions;

d. Statutory damages;

e. Interest;

f. Punitive damages;

g. Attorney fees;

h. Costs;

i. Litigation expenses; and

j. All other relief this Court deems proper.

Respectfully Submitted,

/s/ Robert L. Thompson
**Robert L. Thompson (0098126)**
THOMPSON LEGAL LLC
Columbia Plaza
250 E 5th St., 15th Floor
Cincinnati, Ohio 45202
P: 513-780-5985
F: 513-780-5988
Robert@RthompsonLegal.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

***/s/ Robert L. Thompson***
Robert L. Thompson (0098126)